CARLOS ARMSTRONG E HIJOS SUCRS., INC., Plaintiff and Appellee, v. JUAN DÍAZ SANTINI and PUERTO RICO TEACHERS' ASSOCIATION, Defendants and Appellants.

No. R-64-225.     Decided March 11, 1968.

*José Raúl Cancio* for the Puerto Rico Teachers' Association.
*Antonio Zapater Cajigas* for appellee.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo, Mr. Justice Rigau, and Mr. Justice Ramírez Bages.

MR. JUSTICE RIGAU delivered the opinion of the Court.

The question involved in this case is whether or not it is proper to apply § 1489 of the Civil Code, 31 L.P.R.A. § 4130, which reads as follows:

"Those who furnish their labor and materials in a work agreed upon for a lump sum by a contractor have no action against the owner, except for the amount the latter may owe the former when the action is brought."

Although the case should be decided on the basis of the contract executed between the Puerto Rico Teachers' Association, hereinafter referred to as the Association, and contractor Juan Díaz Santini, on March 2, 1960, it is convenient, for a better understanding of the situation, to make a summary of the facts from the beginning.

In January 1958 the Association bought some land in Ponce to construct a housing development. The Planning Board approved the project and on November 24 of said year the Association and Díaz Santini executed a contract for the subdivision of the land into lots, streets, etc. The development comprised the preparation of 119 lots. The price of the work, after undergoing certain adjustments, was agreed at $195,262.84. A term of 365 days was fixed for the completion of the said works—which term expired November 23, 1959—and it was agreed that in the event the work was not completed within said period the contractor would pay to the Association a penalty of $50 for each day of delay. Simul-

taneously with the development of the land the contractor started the construction of houses by individual contracts with the respective teachers. The contractor did not complete the development of the land within the period stipulated and in March 1960 he abandoned said work. The development of the land was completed by the Association in June 1961.

In the course of the events recited above, on March 2, 1960, the Association executed a new contract with Díaz Santini, in San Juan, before Mr. Luis Miranda Correa, for the construction, by Díaz Santini, of 39 houses in the aforementioned housing project. After certain modifications the contract was increased to 41 houses and the price of the work was $306,975. Among others, this contract contains the following clauses. The works would be completed on or before September 1, 1960. The contractor bound himself "to indemnify" the Association with a sum equal to 8% of the value of each house not finished by September 1, 1960, or with a larger sum, if such were the case, for the "additional cost" of the dwellings, in the event it were necessary to obtain a new financing contract. It was also agreed that the Association would retain a sum equal to 5% of each payment to the contractor for work performed, to secure the correction of any construction defects, which sum would be retained for a period of 3 months, as of the date that the Association received each house as finished. The contractor also bound himself to answer for any other sum, in excess of that 5%, on any date before or after that agreed upon in the contract.

The contractor did not complete either, the works object of this second contract and abandoned them in October 1960. By subsequent agreements the contractor resumed the construction of the houses and finished them later.

Plaintiff, a firm engaged in the sale of construction materials, supplied to Díaz Santini, between May 1 and August 30, 1960, materials of the kind which were utilized in

the construction of the aforementioned houses. When extra-judicial attempts to collect failed, plaintiff filed a complaint on September 14, 1960, against contractor Díaz Santini and the Association to collect the sum of $26,982.76 which the contractor owed to plaintiff for material sold to the latter. Plaintiff alleged the existence of the aforementioned contract of March 2, 1960, between the Association and the contractor by virtue of which the construction of the houses was agreed upon; it alleged having supplied the aforementioned construction material; it alleged the existence of the debt; and it alleged that the Association owed to the contractor a sum of money in excess of the debt that the contractor had with plaintiff. Relying on the afore-copied § 1489 of the Civil Code plaintiff requested that the court order defendants to pay to them the aforementioned sum, interest, costs, and attorney's fees.

Defendant Díaz Santini never answered the complaint and default was timely entered against him. Defendant Teachers' Association denied "each and every one" of the facts alleged in the complaint but this notwithstanding they were found to be true. We have before us as Exhibit I, plaintiff's and defendant's, a photocopy of the contract executed March 2, 1960, between the Association and contractor Díaz Santini. However, there is other documentary and oral evidence. The Superior Court sustained the complaint. It sustained the complaint in full as to Díaz Santini and as to the Association it was limited to the sum of $11,106.50 with costs, without attorney's fees. Plaintiff did not appeal, but codefendant Teachers' Association did.

Appellant assigns the following errors:

1. "The Superior Court erred in concluding that the Teachers' Association made an undue payment to the contractor on August 11, 1960, and that because it is a subsequent modification of the terms of the contract the payment does not prejudice materialman on previous dates."

2. "The court erred in failing to conclude that the Association owed nothing to the contractor."

Let us see now the nature of the legal provision invoked herein—§ 1489 of the Civil Code.

■ Said section provides, in essence, that those who furnish their labor and materials in a work agreed upon for a lump sum by a contractor have no action against the owner of the work except for the amount that the latter may owe to the former when the action is brought.

■ As may be seen this provision is an exception to the principles concerning contracts in our law, since the general rule is that contracts shall only be valid between the parties who execute them and their heirs. Civil Code, § 1209; 31 L.P.R.A. § 3374. However, notwithstanding said general rule the aforementioned § 1489 brings, in a certain manner, a third party to the contract, that is, a party which did not appear in the original contract executed between the owner and the contractor—those who furnished labor or material for the work. Pursuant to the general principles concerning contracts, and in the absence of said § 1489 or other special provisions[1] the workers and materialmen could only institute action for subrogation against the owner of the work, which on the assumption of § 1064 of the Civil Code, would accrue to them as the contractor's creditors. But, on the other hand, § 1489 grants them direct action against the owner or principal. Of course, in order that the owner of the work shall not be bound to pay twice, that is, to the contractor and also to the workers and materialmen, § 1489 specifies that the action may be had only for the amount the owner may owe to the contractor when the action is brought. On this particular you may see 2-III Puig Peña, *Compendio de Derecho Civil Español* 843 (1966); X Manresa, *Comentarios al Código Civil*

---

[1] For example, the lien on the property granted by law to the workers. 29 L.P.R.A. § 186.

*Español* 934 (5th ed. 1950); IV Castán, *Derecho Civil Español, Común y Foral* 462 (9th ed. 1961); 24-2 Scaevola, *Código Civil* 157 (2d ed. 1951); 2-II Puig Brutau, *Fundamentos de Derecho Civil* 397 (1956).[2]

■ The commentators point out that the right and action granted by § 1489 are based on equity, "it being unlawful that the owner or contractor, or both, even by fraudulent conspiracy, may unlawfully enrich themselves with the unpaid labor and contribution of the workers and materialmen." Castán, *loc. cit.* 462. See also, Scaevola, *loc. cit.* 159; and Puig Peña, *loc. cit.* 843. Nart considers the action herein discussed as an authentic action of unjust enrichment— *actio in rem verso*. See his excellent article, of indubitable significance in Puerto Rico at the present time, *"Contrato de Obra y Empresa,"* 35 *Revista de Derecho Privado* 814, 825 (1951). Puig Brutau points out that except for § 1489 the interests of the laborers and materialmen would be protected, but subject to all the inconveniences resulting from its subsidiary nature, by the action of subrogation of the Spanish Code § 1111 (Puerto Rico Code § 1064) unless the case law considers this as a situation which, by its own merits, authorizes the exercise of an *actio in rem verso*. Said commentator believes that the undertone of the doctrine of jurists gave rise to including in statutory law the provision contained in the aforecited § 1489 of the Civil Code of Puerto Rico (1597 Spanish). Puig Brutau, *loc. cit.* 397.

■■ In harmony with the equitable nature of the remedy granted by § 1489 to laborers and materialmen in order that the payment made by the owner of the work to the contractor may defeat the rights of the former it is necessary that the

---

[2] The Supreme Court of Spain (Judgment of June 30, 1920; 150 *Jurisprudencia Civil* 761) and the majority of the writers qualify as exceptional the nature of § 1489 (1597 Spanish) but Scaevola prefers to believe that this is an adaptation of the rule of subrogation contained in the Spanish § 1111 (1064 Code of Puerto Rico) *loc. cit.* 160.

payment be made in good faith. If the payment is malicious or simulated it does not defeat them. As expressed by Scaevola, the connivance of the owner with the contractor to the detriment of the laborers and materialmen will establish an evident parity with the payment in bad faith. *Loc. cit.* 163. As to the same matter see Manresa, *loc. cit.* 935 and Puig Peña, *loc. cit.* 844.

Returning to the case at bar, there is no controversy as to the fact that the contract for the construction of the houses specified that the Association would retain 5% of the payments to be made to the contractor; that the Association would retain the amount of that 5% for a period of three months as of the date on which the Association received each house finished; and that this notwithstanding, on August 15, 1960, the Association paid to the contractor the 5% amounting to $11,106.50, before the latter had finished the houses which corresponded to said payment. In October 1960, approximately two months after said payment of the 5% was made to him, the contractor abandoned the construction of the houses. Previously, in March 1960, he had abandoned the development of the land.

From May 1 to August 30, 1960, plaintiff supplied materials to the contractor. José Luis Pasarell, plaintiff's president and manager, testified that the contractor owed the sum of $26,982.76 for said materials; that on several occasions he had requested the contractor to pay said sum; and that the contractor answered that in addition to the 10% profit he would have in that work, there was the 5% which the Association retained and that said 5% "was practically an insurance" for plaintiff.

The payment of said 5% made by the Association to the contractor before compliance with the condition stipulated in the contract is the payment which the trial court determined "should have been retained by the Association . . . according to the contract . . ." and which was executed "by

mutual agreement between the contractor and the Association."

■ Appellant's .position is that it owed nothing to the contractor when plaintiff filed its complaint, and that therefore it is not bound to pay anything to the latter. It relies on the fact that the penalties incurred by the contractor as a result of his delay absorbed the balance in his favor. We cannot accept that position. In the first place, the penalties arising from the contract for the development of the land cannot be brought against the right of the laborers and materialmen arising from the contract for the construction of the houses. Those are two different contracts, and the clauses of the one, unless otherwise agreed upon, cannot be passed by appellant unilaterally and a posteriori to the other. The protection of § 1489 would be of no avail if that could be done. On this particular the Supreme Court of Spain has decided:

"Whereas the requirement of the supply of materials and labor resulting from the contract for a lump sum, as another requirement inherent to and characteristic of the action in question, imparts to the same a special and objective nature by eliminating recovery by said action of whatever debts may arise against the contractor and in favor of the supplier, by reason of different works resulting from juridical relations foreign to said supply, and even resulting from the works themselves if the supply would not bring cause of the contract in question, and if these limitations appear to be natural before the financing creditor the same phenomenon occurs to the prejudice of the owner, who, for this reason, *shall not assert against such creditor the claims and exceptions arising from other juridical businesses had with his contractor and charged to the latter's account,* nor may he enervate the direct action analyzed with obstacles and apparent rights created under the shadow of other different acts or facts of the labor contract for a lump sum, origin of that action, which in nowise concern the veracity of the supply on which the same is based." (Italics ours.) Judgment of June 11, 1928, 184 *Jurisprudencia Civil* 134, 145.

In the same sense see Scaevola, 24 *Código Civil* 164 (2d ed.).

In the second place, the penalty we find in the contract of the houses consists of the obligation of the contractor to pay to the Association 8% of the value of the houses not finished on time; or a larger sum if such should be the case, to "indemnify" the Association for the "additional cost" which the latter may incur in the financing negotiations caused by the contractor's delay. There was no evidence that the Association incurred in such additional costs.

The evidence shows that the amount of the contract of the houses as agreed upon was $306,975 and that up to August 18, 1960, the Association had made payments to the contractor amounting to $228,275, which left a balance of $78,700 in favor of the latter.

Against this balance the Association seeks to deduct the following items: (a) $4,100 "to pay part of the administrative expenses of the project and the Housing Plan of the Association . . ." at the rate of $100 for each house constructed, which sum the contractor would pay to the Association "at the time he received the last payment for each house" (Ninth clause of the contract); (b) $2,400 for legal expenses incurred by reason of the noncompliance of the contractor; (c) $24,186 by virtue of the seventh clause of the contract (the 8% to indemnify the Association for additional financing costs); (d) $33,634.95 for the cost of the completion of the houses.

It is not necessary to enter into a discussion as to which of these items are and which are not opposable to the suppliers, because even assuming, without deciding it, that their deduction from the balance in favor of the contractor lies, there would still remain sufficient money in favor of the latter to cover the judgment rendered by the trial court in this case. Neither need we qualify the 5% payment made in advance, which, according to the contract, the Association should retain until after three months from the date on which

the Association received the finished houses, but there is nothing in the judgment of the trial court on this particular that calls for reversal. This is the contention raised in the first assignment of error. For the reasons afore-stated we conclude that the second error was not committed either.

The judgment rendered in this case by the Superior Court, Ponce Part, on October 16, 1964, will be affirmed.